**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GUSTAVO KAPLAN,**

**Plaintiff,**

**v.**                                                                                    **1:19-cv-941**

**THE COUNTY OF WARREN; NATHAN H. YORK**
**Individually and as Sheriff of the County of Warren,**
**and COURTNEY HOWSE, Individually and as an**
**Employee of the County of Warren,**

**Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION and ORDER**

**I.      INTRODUCTION**

Plaintiff Gustavo Kaplan commenced this civil rights action brought pursuant to 42

U.S.C. § 1983 with the assistance of counsel.  _See_ Compl., Dkt. 1.  On May 22, 2020,

Magistrate Judge Stewart granted Plaintiff's counsel's motion to withdraw from

representing Plaintiff, and Judge Stewart stayed the case for thirty (30) days to allow

Kaplan to retain new counsel. _See_ Dkt. 23.  During a telephone conference on June 24,

2020, Plaintiff advised Judge Stewart that he was unable to find counsel and Judge

Stewart then ordered that Plaintiff proceed with the case on a pro se basis. Dkt.  28.

Defendants now move for summary judgment seeking to dismiss all claims in this

action.  _See_ Dkt. 38.  Plaintiff has failed to respond to the motion, and his time to do so

1

has expired.  For the reasons that follow, the motion is granted.

## II.   STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin*, 467 F.3d at 273.  While courts are required to give due deference to a plaintiff's pro se status, that status "does not relieve [a pro se] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).

Plaintiff has failed to respond to the defendants' motion for summary judgement and has specifically failed to respond to the statement of material facts in the manner required under N.D.N.Y. L.R. 56.1(b).[1]  "The fact that there has been no response to a

---

[1]N.D.N.Y. L.R. 56.1(b) provides:

The opposing party shall file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting

(continued...)

summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  However, when a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Where, as here, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 56.1(b), the facts in the movant's statement to which the plaintiff has not properly responded will be accepted as true (1) to the extent that they are supported by evidence in the record, and (2) provided that the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion.[2] *See Champion*, 76 F.3d at 486.   Accordingly, the facts set forth in the defendants' Statement of Material Facts (Dkt. 38-5) that are supported by record evidence and are uncontroverted by nonconclusory allegations in Plaintiff's complaint will be accepted as true.  *Phillips v. Mitchell*, No. 9:19-CV-0383 (TJM/TWD), 2021 WL 1175051, at *4 (N.D.N.Y. Mar. 29, 2021).  As to any facts not contained in the defendants' Statement of Material Facts, the Court is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of Plaintiff.  *Terry v. Ashcroft*, 336 F.3d 128, 137

---

[1](...continued)
and/or denying each of the  movant's assertions in a short and concise statement, in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  <u>The Court may deem admitted any properly supported facts set forth in the Statement of  Material Facts that the opposing party does not specifically controvert</u>.

N.D.N.Y. L.R. 56.1(b) (emphasis in original).

[2]The defendants have provided Plaintiff with the requisite notice of the consequences of his failure to respond to the motion.  See Dkt. 38-1.

3

(2d Cir. 2003)(citation omitted).

## III.  BACKGROUND[3]

At all times relevant to this action Defendant Howse was employed as a Patrol Officer with the Warren County Sheriff's Office, and since 2016 has served as the Property Clerk for the Sheriff's Office in which capacity she is responsible for the management and oversight of the Sheriff's Department's Evidence Property Room and storage locations.  SOMF ¶¶ 1, 3.  On August 2, 2016,  Howse was working as the Property Clerk at the Warren County Sheriff's Office when, at approximately 11: 15 a.m., she was contacted by the Communications Dispatcher and told that a person was in the lobby looking to retrieve property.  *Id.* ¶ 4.  Howse responded to the lobby and there observed a female and Plaintiff Gustavo Kaplan. *Id.* ¶ 6.  Plaintiff told Howse that he was there to pick up evidence from a case, produced a piece of paper, and told her that the evidence included a police scanner, approximately $3,000 in cash, and rice papers. *Id.* ¶ 7.  The piece of paper plaintiff produced was a Certificate of Disposition from the Chestertown Town Court that listed Plaintiff as the criminal defendant, stated that the date of arrest was July 8, 2015, and the date of disposition was that day, August 2, 2016.  *Id.* ¶ 8.  Although the document was a Certificate of Disposition, it did not indicate what the disposition of the criminal charge was, stating only that it was "sealed."  *Id.* ¶ 9.  As Property Clerk for the Warren County Sheriff's Office, Howse had previously seen cases where criminal defendants had been convicted and the files had been sealed, and cases where the defendant's charge was dismissed and the case was sealed. *Id.* ¶ 10.  Plaintiff's

---

[3]Except where indicated otherwise, the following facts are established by Defendants' Statement of Material Facts, Dkt. 83-5 ("SOMF").

Certificate of Disposition did not include any statement as to what the outcome of the criminal charge was, it only said that it was "sealed." *Id.* ¶ 11.  Pursuant to the Warren County Sheriff's Office written policy regarding the handling of evidence, Howse was prohibited from releasing evidence or property until thirty days after the disposition of the criminal charge. *Id.* ¶ 12.  Without knowing what the actual disposition of Plaintiff's criminal case was, Howse was unable to return his property to him without more information from the court that disposed of the case, and she explained that to Plaintiff.  *Id.* ¶ 13.

After Howse explained all of that to Plaintiff, he became very angry, started pointing at the paper and hitting it with his finger, telling Howse that she needed to accept the paper and return his property to him.  *Id.* ¶ 14.  Howse again explained that she could not do that. *Id.*  Plaintiff became very agitated and was yelling that he was a victim, that police officers "fed him to the dogs." *Id.* ¶ 15.  Howse told Plaintiff she had no idea what he was talking about and Plaintiff showed her a scar on his shoulder, repeating that he had been "fed to the dogs." *Id.*  Plaintiff continued to yell that the officers were all thieves and murderers and kept pointing at the paper at which time Howse asked Plaintiff to leave the Sheriff's Office lobby. *Id.* ¶ 16.  At that point, the female with Plaintiff picked up the piece of paper from the desk in the lobby, and Plaintiff and the female turned and started to walk away while Plaintiff was mumbling things about thieves and murderers.  *Id.* ¶ 17. As Howse was approaching the door to re-enter the Sheriff's Office she heard Plaintiff say the word "shoot" or "shooting," and immediately turned around and asked Plaintiff what he said. *Id.* ¶ 18.   Plaintiff was near the first set of doors out of the lobby area and in response Howse heard him say something that ended with "come back and shoot the place down." *Id.* ¶ 19.  Plaintiff's conduct and his statement caused Howse great concern

5

as she took Plaintiff's statement as a threat to harm her personally and a threat to the safety of other members of the Warren County Sheriff's Department and occupants of the Warren County Sheriff's Office. *Id.* ¶ 20. Based on her interaction with Plaintiff, Howse believed that he had just threatened to cause bodily injury to her and/or others, and believed that he was capable of carrying out that threat and may have gone to get a weapon to do so. *Id.* ¶ 21.

Howse watched Plaintiff until he completely exited the vestibule and then went inside the Sheriff's Office where she came in contact with multiple other officers that were armed and they all went out into the parking lot to locate Plaintiff but he had already left the area. *Id.* ¶ 22. After returning to the Sheriff's Office, Howse reported what had occurred to her superiors and a determination was made that there was probable cause to believe that Plaintiff had committed a crime and that he would be arrested for same. *Id.* ¶ 23.

At approximately 3:30 that afternoon, Plaintiff returned to the Warren County Sheriff's Office and was taken into custody by several officers. *Id.* ¶ 24. An Incident Report and Arrest Report were prepared, and a felony Complaint was prepared and signed by Howse as Complainant charging Plaintiff with violating New York Penal Law §490.20(1): Making A Terroristic Threat. *Id.* ¶ 25. At the time the Complaint was signed, Howse believed that Plaintiff had threatened to commit the crime of Assault in the Second Degree in violation of Penal Law Section 120.05(2) to intimidate or coerce her and the Sheriff's Department into returning his property immediately, which was not permitted under Department policy, or to otherwise cause disruptions to the function of the Sheriff's Office through violence. *Id.* ¶ 26. In addition to the above-stated felony charge, Howse

believed there was probable cause for two other violations of the Penal Law that Plaintiff could have been charged with as a result of his conduct on August 2, 2016: Penal Law §240.26(1), Harassment in the Second Degree, which provides that a person is guilty of harassment in the Second Degree when, with intent to harass, annoy or alarm another person, he strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; and Penal Law §240.20(1), Disorderly Conduct, which provides that a person is guilty of Disorderly Conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he engages in fighting or in violent, tumultuous or threatening behavior.  *Id.* ¶ 27.

Defendant Nathan H. York, who served as the duly elected Sheriff for the County of Warren from 2008 through 2020, was not personally involved and played no role in the arrest or subsequent prosecution of Plaintiff.  *Id.* ¶¶ 28-29.

On August 5, 2016, a Warren County Grand Jury returned an indictment against Plaintiff accusing him of committing the crime of Making a Terroristic Threat, a Class D felony, in violation of Section 490.20(1) of the New York Penal Law. *Id.* ¶ 32.  During the course of Plaintiff's prosecution in Warren County Court, Plaintiff's criminal defense attorney filed a motion seeking dismissal of the indictment on various grounds including that "the evidence before the grand jury was not legally sufficient to establish the offense charged or any lessor included offense." *Id.* ¶ 33.  On November 2, 2016, the Hon. John S. Hall, Jr., Warren County Court Judge, rendered a Decision and Order denying the criminal defense Motion. *Id.* ¶ 34.  Pertinent thereto, the County Court held that after having examined the minutes of the Grand Jury *in camera*, the Court determined that the evidence before the Grand Jury was legally sufficient to support the charge contained in

the indictment. *Id.*  The Court further held "that the presentation to the Grand Jury was proper in all respects" . . . and that "the indictment was based upon adequate and competent evidence legally sufficient to support the crimes charged therein ... and the Court detected no infirmity warranting the dismissal of the indictment." *Id.*

On March 3, 2017, after having been found guilty by a jury of the indicted charge of Making a Terroristic Threat in violation of New York Penal Law §490.20(1), Plaintiff was sentenced to a term of five years in New York State prison and three years post-release supervision. *Id.* ¶ 35.  Plaintiff appealed his conviction and in a Decision entered January 17, 2019, the Supreme Court of New York, Appellate Division-Third Department, reversed Plaintiff's conviction holding that the verdict finding Kaplan guilty of making a terroristic threat was not supported by legally sufficient evidence.  *People v. Kaplan*, 168 A.D.3d 1229, 1231, 91 N.Y.S.3d 601 (NY App. Div. 2019), *leave to appeal denied*, 33 N.Y.3d 1032, 126 N.E.3d 156 (NY 2019).  Specifically, the Appellate Division held that the element of the crime for which there was no evidence was "that defendant intended to influence the policy of a governmental unit by intimidation or coercion, or that he intended to effect the conduct of a unit of government by murder, assassination or kidnapping." *Kaplan*, 168 A.D.3d at 1230.  The Court held that in making the threat that he would "come back and shoot the place down" to Howse, Kaplan did not relate that threat to any policy of the Warren County Sheriff's Office or any demand that the Warren County Sheriff's Office take any specific action. *Id.*  The Third Department stated: "We do not condone defendant's statement, which understandably raised the concern of the law enforcement officers involved.  However, in our view, defendant's threat to 'shoot the place down'—made in response to Howse's inquiry—did not evince an intent to influence the

policy or actions of the [Warren County Sheriff's Office] but, rather, reflected his vented anger that his property had not been returned to him." *Id.* at 1230–31.

Plaintiff asserts in the Complaint that Howse "fabricat[ed] a story that plaintiff uttered a violent threat" in order to arrest him and charge him with a crime, Compl. ¶ 16, and that Howse made "false statements" in the resulting accusatory instrument and to a grand jury. *Id.* ¶ 18.  Plaintiff also alleges that his "original arrest and the charges were advanced without sufficient evidence or probable cause to believe he had committed the alleged criminal offense," and that he was prosecuted "by and with the presentation of false testimony, evidence and law to both to a grand jury and at trial, and by Warren County Sheriff Department's employees withholding of material evidence that would show that plaintiff had not committed the offense charged." *Id.* ¶ 20.   Howes's statements and beliefs, as referenced above, are supported by her detailed affidavit. *See* Dkt. 38-3. Plaintiff's bald, conclusory allegations contained in the Complaint are insufficient to create a genuine issue of material fact as to the properly supported facts alleged in the defendants' uncontested Statement of Material Facts, including Howes's statements and beliefs set forth in her affidavit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)(The nonmoving party must do more than "rest upon the mere allegations ... of [ the plaintiffs] pleading" or "simply show that there is some metaphysical doubt as to the material facts."); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)(To defeat summary judgment, nonmoving parties "may not rely on conclusory allegations or unsubstantiated speculation."  Rather "[a]t the summary judgment stage, a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful.") (citations and quotation marks omitted);

9

*Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998)("Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact."); *Bickerstaffv. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) (Statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); *Cole v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)("[P]roceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment.")(citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); N.D.N.Y. L.R. 56.1(b)("The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.")(emphasis in original).

## IV.   DISCUSSION

### First and Fifth Causes of Action

In the First and Fifth Causes of Action in the Complaint, Plaintiff alleges that he was subjected to violations of his constitutional rights claiming that he was falsely arrested and maliciously prosecuted. He further purports to allege violations of his rights to due process and equal protection, and that he was subjected to malicious abuse of process.

### False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996))(citations omitted)); *see Guadagni v. N.Y.C. Trans. Auth.*, 2009 WL 1910953, at * 4

(E.D.N.Y. June 30, 2009)("Federal claims for false arrest and imprisonment brought via §

1983 rest on an individual's Fourth Amendment right to be 'free from unreasonable

seizures, including arrest without probable cause,' and are 'substantially the same as a

claim for false arrest under New York law.'" )(quoting *Weyant*, 101 F.3d at 852); *see also*

*Ostroski v. Town of Southold*, 443 F. Supp.2d 325, 334 (E.D.N.Y. 2006)("In New York, the

claim colloquially known as 'false arrest' is a variant of the tort of false imprisonment, and

that tort is used to analyze an alleged Fourth Amendment violation in the § 1983

context.")(citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995), *cert.*

*denied*, 517 U.S. 1189, 116 S. Ct. 1676, 134 L. Ed.2d 779 (1996)).  "To state a claim for

false arrest or false imprisonment under New York law, a plaintiff must show that: (1) the

defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the

confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement

was not otherwise justified." *Guadagni*, 2009 WL 1910953, at * 4 (citing *Savino v. City of*

*N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003)).

     "The existence of probable cause to arrest constitutes justification and is a

complete defense to an action for false arrest [.]"  *Weyant*, 101 F.3d at 852 )(internal

citation and quotation omitted); *see Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir.

2018)("[P]robable cause [is] an absolute defense to the action.").   Probable cause "exists

when the officers have knowledge or reasonably trustworthy information of facts and

circumstances that are sufficient to warrant a person of reasonable caution in the belief

that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of*

*Schenectady,* 728 F.3d 149, 155 (2d Cir. 2013)( citing *Weyant*, 101 F.3d at  852); *see*

*Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) ("Officers have probable

11

cause when they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.") (internal quotation marks omitted)).

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152  (2004)(citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). When reviewing whether probable cause existed, the Court must consider the totality of the circumstances. *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013).  The relevant inquiry is whether "probable cause existed to arrest a defendant" and "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).  "A probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." *Hahn v. County of Otsego*, 820 F. Supp. 54, 55 (N.D.N.Y. 1993), *aff'd*, 52 F.3d 310 (2d Cir. 1995).  "[T]he eventual disposition of the criminal charges is irrelevant to the probable cause determination." *Hahn*, 820 F. Supp. at 55 (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)).

Here, although the Appellate Division found that the trial evidence was insufficient to support that Kaplan intended to influence a policy of a governmental unit by intimidation or coercion or to affect the conduct of a governmental unit by murder, assassination or kidnapping - a necessary element of the charge of making a terrorist threat in violation of

New York Penal Law Section 490.20(1), *see* N.Y. Penal Law § 490.20(1),[4] the evidence

submitted on this motion indicates that the facts before Howse were sufficient for her to

form a reasonable belief that it was Kaplan's intention to influence a policy of the Warren

County Sheriff's Office by intimidation.  The facts indicate that Kaplan was angry because

Howse would not immediately release his property, he argued with Howse about it, he

acted highly agitated when Howse refused to immediately return his property, he shouted

that police officers were all thieves and murderers, and he started to leave the lobby while

mumbling the officers were all thieves and murderers.  He stated something that sounded

to Howse that he said "shoot" or "shooting," and when Howse asked him what he said he

said something that sounded to Howse like it ended with the statement that Plaintiff would

come back and shoot the place down.  For the reasons stated above, Plaintiff's bald,

conclusory allegations in the Complaint that Howse "fabricat[ed] a story that plaintiff

uttered a violent threat" in order to arrest him and charge him with a crime, that Howse

made "false statements" in the resulting accusatory instrument and to a grand jury, that his

"original arrest and the charges were advanced without sufficient evidence or probable

cause to believe he had committed the alleged criminal offense," and that he was

prosecuted "by and with the presentation of false testimony, evidence and law to both to a

grand jury and at trial," are insufficient to create a genuine question of material fact as to

---

[4]This provides,

1. A person is guilty of making a terroristic threat when with intent to intimidate or coerce a civilian population, influence the policy of a unit of government by intimidation or coercion, or affect the conduct of a unit of government by murder, assassination or kidnapping, he or she threatens to commit or cause to be committed a specified offense and thereby causes a reasonable expectation or fear of the imminent commission of such offense.

N.Y. Penal Law § 490.20(1).

the specific circumstances in the Warren County Sheriff's Department's lobby on August 2, 2016.  Importantly, Plaintiff has not contested the factual statements in Defendants' Statement of Material Facts, including the numerous facts supported by Howes's affidavit (Dkt. 83-3), and he does not state in the Complaint or anywhere else exactly what he contends occurred and what he said on August 2, 2016.   Further, Howse stated in her affidavit, without contradiction, that "[a]t the time the Complaint was signed, it was [her] belief that plaintiff had threatened to commit the crime of Assault in the Second Degree in violation of Penal Law Section 120.05(2) to intimidate or coerce me and the Sheriff's Department into returning his property immediately, which was not permitted under Department policy, or to otherwise cause disruptions to the function of the Sheriff's Office through violence."  Howse Aff., Dkt. 38-3, ¶ 29.

Although the evidence at trial may not have supported the intent element of the Section 490.20(1) charge, the uncontested evidence presented on this motion indicates that Howse possessed trustworthy evidence - Kaplan's actions and words - which would warrant a person of reasonable caution in the belief that Kaplan violated Section 490.20(1) by threatening violence intended to intimidate Howse to immediately release his property despite the Sheriff's Office's policy prohibiting such action.   Because Howse possessed probable cause to arrest Plaintiff for violating Section 409.20(1), even if the charge was not later sustained, Defendants are entitled to summary judgment on the false arrest claim which must be dismissed.[5]

---

[5]Howse also possessed probable cause to arrest Plaintiff for violating New York Penal Law § 240.26(1), Harassment in the Second Degree (which provides that a person is guilty of harassment in the Second Degree when, with intent to harass, annoy or alarm another person, he strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same), and   §

(continued...)

**Malicious Prosecution**

"'In order to prevail on a § 1983 claim against a state actor for malicious

prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment,

and must establish the elements of a malicious prosecution claim under state law.'"

*McGrier v. City of New York*, 849 F. App'x 268, 270 (2d Cir. 2021)(quoting *Manganiello v.*

*City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (internal citations omitted)).   "The

elements of a malicious prosecution claim under New York law are '(1) the initiation or

continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in

plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual

malice as a motivation for defendant's actions.'" *Id.* (quoting *Manganiello*, 612 F.3d at 161

(internal quotation marks omitted)).

"'The existence of probable cause is a complete defense to a claim of malicious

prosecution in New York, and indictment by a grand jury creates a presumption of

probable cause. That presumption may be rebutted only by evidence that the indictment

was procured by fraud, perjury, the suppression of evidence[,] or other police conduct

undertaken in bad faith.'" *Id.* (quoting *Manganiello*, 612 F.3d at 161–62 (alterations,

citations, and internal quotation marks omitted)).   It is "the plaintiff who bears the burden of

proof in rebutting the presumption of probable cause that arises from the indictment."

*Savino*, 331 F3d at 73; *see also Bernard v. United States*, 25 F3d 98, 104 (2d Cir. 1994)

(under New York law, "the plaintiff must establish that the indictment was produced by

_____

[5](...continued)
240.20(1),  Disorderly Conduct (which provides that a person is guilty of Disorderly Conduct when, with intent
to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he engages in
fighting or in violent, tumultuous or threatening behavior).  *See* SOMF  ¶ 27.

fraud, perjury, the suppression of evidence, or other police conduct undertaken in bad faith").  For Plaintiff to meet this burden on summary judgment, he must submit evidence "sufficient for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad faith." *Savino*, 331 F.3d at 73.

Plaintiff presents insufficient evidence for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad faith.  As indicated above, Howse has presented admissible and uncontested evidence that on August 2, 2016, Kaplan was angry because Howse would not immediately return his property and, as he was leaving, he made a statement that sounded like a threat that he would come back and shoot the place down.  As also indicated above, Plaintiff's bald, conclusory allegations in the Complaint that Howse "fabricat[ed] a story that plaintiff uttered a violent threat" in order to arrest him and charge him with a crime, and that Howse made "false statements" in the resulting accusatory instrument and to a grand jury, are insufficient to challenge Howse's rendition of the events of August 2, 2016.  They are also insufficient to rebut the presumption of probable cause created by the Grand Jury's indictment. *See*, *e.g, Savino*, 331 F.3d at 73 ("The District Court erroneously shifted this burden to defendants by permitting Savino to rebut the presumption of probable cause with mere 'conjecture' and 'surmise' that his indictment was procured as a result of conduct undertaken by the defendants in bad faith.").  Plaintiff presents no admissible evidence specifically indicating that Howse testified falsely at the Grand Jury when she, presumably, stated that Kaplan threatened to "come back and shoot the place down."

Furthermore, there is no admissible evidence indicating that the commencement of the criminal proceeding against Plaintiff was motivated by actual malice on the part of

Howse.  In the context of a malicious prosecution claim, malice consists of a "wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F .3d 563, 573 (2d Cir. 1996).  A "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).  "Conversely, the existence of probable cause on these facts precludes a finding of malice, as there is no improper motive in following through on the prosecution of a defendant lawfully arrested." *Angevin v. City of New York*, 204 F.Supp3d 469, 482 (E.D.N.Y. 2016).

As indicated above, the uncontested facts set forth in Defendants' Statement of Material Facts indicate that Howse had probable cause for the prosecution.  Plaintiff fails to present sufficient evidence indicating that Howse had "a wrong or improper motive" for filing the criminal complaint or that she was motivated by anything other than following through on the criminal charges filed against Plaintiff whom she believed had been lawfully arrested.   Here, there exists insufficient evidence that the actions of Officer Howse were taken for any other reason but to serve the ends of justice.

For these reasons, Defendants are entitled to summary judgment on the malicious prosecution claim, which must  be dismissed.

### Fabrication of Evidence

In his Complaint Plaintiff alleges that Howse fabricated evidence in violation of Plaintiff's Fourteenth Amendment procedural due process rights.  Specifically, Plaintiff alleges that Howse falsely stated in the felony complaint that Plaintiff had threatened to "come back and shoot the place down."  She purportedly continued this fabrication when she so testified at Grand Jury and then at the criminal trial which resulted in Plaintiff's

criminal conviction.

The claim arises under the Due Process Clause's guarantee of the right to a fair trial for criminal defendants.  *See Ozzborn v. Cornell*, No. 9:17-CV-1039 (MAD/ATB), 2021 WL 2227829, at *6 (N.D.N.Y. June 2, 2021).   "A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  *Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d Cir. 2012).

According to Defendants, Howse testified at the  Grand Jury and at trial consistent with the allegations set forth in the felony complaint that Plaintiff had made the threat that he was going to "come back and shoot the place down." *See* Dkt. 38-6, at 13.  Defendants assert:

> Her testimony was credited by the Grand Jury, resulting in the indictment of plaintiff.  A second jury at plaintiff's criminal trial heard Officer Howse testify under oath that plaintiff had made the threat attributed to him and that jury also believed Officer Howse's testimony as evidenced by their verdict convicting plaintiff of making a terroristic threat.  Finally, on appeal, the Appellate Division also credited the threat as viable evidence in the case noting that the threat "understandably raised the concern of the law enforcement officers involved." Plaintiff's conviction was reversed based on a technical failure in the trial presentation by the District Attorney to tie the threat to an intent to adversely effect a governmental function. The evidence that the threat was made, per Officer Howse's testimony, remained unchallenged and was credited by the Appellate Court decision.

*Id.* at 13-14.

For reasons discussed above, Plaintiff's conclusory allegations in the Complaint that Howse fabricated evidence in the underlying criminal matter are insufficient to overcome Defendants' uncontested facts alleged in their Statement of Material Facts that

18

Plaintiff stated, in a fit of anger as he left the Sheriff's Office, that he would come back and shoot the place down.  Because there is no admissible testimony beyond Plaintiff's bald, conclusory allegations that Howse fabricated the testimony that Plaintiff threatened to come back and shoot the place down, Defendants' motion seeking summary judgment on Plaintiff's fabrication of evidence claim is granted, and the claim is dismissed.

### Malicious Abuse of Process

Plaintiff purports to allege a claim for malicious abuse of process.  "In the criminal context, malicious abuse of process is by definition a denial of procedural due process. . . . Procedural due process forbids the use of legal process for a wrongful purpose." *Abreu v. Romero*, 2010 WL 4615879, at *8 (S.D.N.Y.  Nov. 9, 2010)(citation omitted).  To state a claim for malicious abuse of process, Plaintiff must prove the defendant: (1) employed regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; (3) to obtain a collateral objective outside the legitimate ends of the process.  *Devarnne v. City of Schenectady*, 2011 WL 219722, at *3 (N.D.N.Y. Jan. 21, 2011) (citing *Savino*, 331 F.3d at 76).

> In New York, "[a] malicious motive alone ... does not give rise to a cause of action for abuse of process." *Savino*, 331 F.3d at 77 (alteration in original)(quoting *Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984)).  "In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action." *Id.*  A plaintiff alleging abuse of process must claim that the defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.*

*Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016)

"[T]he proper use of legal process based on an improper or malicious motive such as a desire for retaliation is insufficient to satisfy the 'collateral objective' requirement."

*Pinter v. City of New York*, 976 F. Supp.2d 539, 568 (S.D.N.Y. 2013).  "In New York . . . wrongful [collateral] purposes have included economic harm, extortion, blackmail, and retribution." *Ketchuck v. Boyer*,  2011 WL 5080404 at *7 (N.D.N.Y. Oct. 25, 2011); *see Hovos v. City of New York*, 999 F. Supp.2d 375, 391 (E.D.N.Y. 2013)("A malicious abuse of process claim thus requires an ulterior purpose such as the infliction of economic harm, extortion, blackmail, or retribution.").  "While a lack of probable cause is not explicitly an element of an abuse of process claim, the presence of [arguable] probable cause negates a claim for abuse of process, particularly the second element." *Sforza v. City of N.Y.*, 2009 U.S. Dist. LEXIS 27358, at *49-50 (S.D.N.Y. Mar. 31, 2009) (internal quotation marks omitted); *see Basinski v. City of N.Y.*, 192 F. Supp. 3d 360, 367 n.6 (S.D.N.Y. 2016) ("a finding of arguable probable cause for an arrest vitiates a claim for abuse of process based on that arrest").  "Conversely, the lack of probable cause gives rise to an inference of malice, supporting a finding of 'intent to harm.'" *Sforza*, 2009 U.S. Dist. LEXIS 27358, at *50.

For reasons discussed above, there is no admissible testimony beyond Plaintiff's bald, conclusory allegations in his Complaint that Howse fabricated the testimony that Plaintiff threatened to come back to the Sheriff's Office and shoot the place down.  Based on the uncontested facts alleged in the Defendants' Statement of Material Facts,  Howse had, at the least, arguable probable cause to charge Plaintiff with a violation of New York Penal Law Section  490.20(1).  Accordingly, Defendants are entitled to summary judgment on the Plaintiff's  claim for malicious abuse of process, which must be dismissed.

### Denial of Equal Protection

Plaintiff asserts in the Complaint that his "rights, privileges and immunities deprived

20

by defendants included, but are not limited to: . . .  c. Right to equal protection under the laws."  Compl. ¶ 25.  He provides no further indication how his right to equal protection was violated.   The bald, conclusory allegation in the Complaint does not state a plausible Equal Protection Clause violation.  Accordingly, Defendants are entitled to summary judgment on the equal protection clause claim, which must be dismissed.

### *Monell* Claims

In the Second, Third, and Fourth Causes of Action, Plaintiff asserts claims under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978).  *See* Compl. Second Cause of Action ("Unconstitutional Custom, Practice or Policy-Municipal Liability Under *Monell*"); Third Cause of Action ("Failure to Train-Municipal Liability Under *Monell*"); Fourth Cause of Action ("Failure to Supervise-Municipal Liability Under *Monell*").  "'Under the Supreme Court's decision in *Monell* ..., local governments may be held liable in § 1983 actions' if a plaintiff can 'show that he suffered the denial of a constitutional right was caused by an official municipal policy or custom.'" *McGrier*, 849 F. App'x at 272 (quoting *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020) (internal quotation marks omitted)).  "'Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.'" *Id.* (quoting *Frost*, 980 F.3d at 257 (internal quotation marks omitted)). "There are three elements to a *Monell* claim: '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Id.* (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (internal quotation marks omitted)).  Because

21

Plaintiff fails to establish that he was subjected to a denial of a constitutional right, Defendants are entitled to summary judgment on Plaintiff's *Monell* claims, which must be dismissed.

## V.      CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment, Dkt. 38, is **GRANTED**, and the Complaint, Dkt. 1, is **DISMISSED**.   The Clerk of the Court is respectfully directed to close this case.

**IT IS SO ORDERED.**

Dated: September 10, 2021

Thomas J. McAvoy
Senior, U.S. District Judge

22